UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| WEBSTER JONES,<br>        Plaintiff,<br><br>        v.<br><br>JOSEPH GIUTTARI, HYBRID<br>CAPITAL GROUP, LLC, THE FENS<br>COMPANY, LLC, PEERLESS HI<br>YIELD REALTY FUND, LP, JG<br>FAMILY TRUST,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 21-cv-00399-MSM-PAS |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Webster Jones, alleges that the named defendants intentionally misrepresented a real estate transaction, breached a contract and an implied covenant of good faith and fair dealing, unjustly enriched themselves, and committed civil theft—all at his expense. (ECF No. 1.) Mr. Jones moves for summary judgment of all of his claims pursuant to Fed. R. Civ. P. 56. (ECF No. 26.) For the reasons to follow, the Court abstains from deciding the merits of Mr. Jones' motion and stays the case.

## I.    BACKGROUND

Webster Jones is a hay farmer from Conway, New Hampshire. (ECF No. 26-4 at 23.) Mr. Jones invested over $700,000 in three notes issued by some or all of the defendants. *Id.* Mr. Jones was not paid what he was due under the notes. *Id.* The defendants admit that they did not and have not paid Mr. Jones what they promised.

(ECF No. 28.) However, the defendants dispute whether "*certain* defendants owe the plaintiff money on *certain* loans … [and they deny] that misrepresentation and civil theft ever occurred." *Id.* at 1.

The defendants successfully preyed upon an unsophisticated investor to deprive him of his life savings. *Id.* They now seek to avoid liability by drawing fine lines in their interlaced corporate structure and dealings. *Id.* at 3. The plaintiff, Mr. Jones, already carried this case through a New Hampshire administrative process. (ECF No. 26-4.) The New Hampshire Bureau of Securities Regulation addressed this transaction and determined, after a hearing that included expert testimony, that the defendants violated New Hampshire securities law and harmed Mr. Jones. *Id.* The New Hampshire Secretary of State then issued an order compelling the defendants to pay Mr. Jones restitution in the amount of $737,466, plus interest at the legal rate, along with the Bureau's costs, plus administrative fines and penalties. *Id.* at 24.

The New Hampshire proceedings warranted consideration of whether this Court should abstain from deciding the merits of the matter. Although the Court invited the parties to provide additional briefing on the abstention issue, neither party made any such filing. Therefore, this Court now holds that because the New Hampshire body addressed this transaction, analyzed complex questions of state law, and issued a final order, and because the New Hampshire regulatory scheme provides a mechanism for that order's enforcement, the Court shall exercise its discretion to

abstain from deciding the merits of Mr. Jones' motion. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 815–16 (1976).

## II.   DISCUSSION

A lower court's decision to abstain has two elements. The court must first determine whether certain preconditions for abstention are met and, if so, must then determine whether abstention is appropriate. *DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997). When abstention is appropriate, the ultimate decision whether to abstain rests within the court's discretion. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 19 (1983).

The baseline rule is that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Abstention is only appropriate in unusual circumstances. *Id.* Courts have developed a variety of abstention doctrines that attempt to limit the bounds and contours of such circumstances. *See, e.g., Colorado River Water Conversation District v. United States*, 424 U.S. 800 (1976); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

*Colorado River* provides a district court authority to abstain under certain extraordinary circumstances when there is a parallel proceeding in a state forum. *Glassie v. Doucette*, 55 F.4th 58, 64 (1st Cir. 2022). To determine whether the appropriate circumstances lie, a district court may consider: (1) whether the state or federal forum has assumed jurisdiction over the claims arising from the transaction; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal

litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991). This list is not exhaustive, nor is any one factor necessarily determinative. *Colorado River*, 424 U.S. at 818. "[A] carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 12 (1st Cir. 1990).

The circumstances in this case are as follows. There is a regulatory body in New Hampshire that is part of a complex scheme designed specifically to protect investors from the type of harms alleged here. *See Appeal of Basani*, 149 N.H. 259, 261, 817 A.2d 957 (2003) (outlining the New Hampshire regulatory scheme, noting that "the presiding officer's findings of fact are deemed prima facie lawful and reasonable," and emphasizing that a New Hampshire court "will not set aside the presiding officer's decision except for errors of law, unless [the court is] satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable."). That body held a hearing involving expert testimony on complex issues of New Hampshire state-securities law, where it concluded that the three notes the defendants advertised and issued were unsecured, unregistered, unlawful securities. (ECF No 26-4 at 21.) Ultimately, "in the public interest and for the protection of investors and consistent with the intent and purpose of the New Hampshire

4

Securities Act, RSA 421-B," New Hampshire's Secretary of State issued an order compelling the defendants to pay the plaintiff *and* the Bureau to remedy the harms arising from the relevant transaction. *Id.* at 24. And the state provides a mechanism for that order's enforcement. N. H. Rev. Stat. § 421-B:6-604(h) (2022) ("If a person fails to comply with an order under this section, the attorney general or secretary of state may petition a court of competent jurisdiction to enforce the order.").

While it is unclear what additional relief Mr. Jones now seeks from this Court, the circumstances here do clearly present a duplication issue. *Glassie*, 55 F.4th at 63 ("[A] federal court may abstain in certain instances where there is a parallel state court proceeding based on considerations of wise judicial administration that counsel against duplicative lawsuits."). Considering that issue and "considerations of wise judicial administration," the Court concludes that *Colorado River* counsels against deciding the merits of Mr. Jones' motion. 424 U.S. at 817.[1]

---

[1] It is worth noting that this matter implicates both *Burford* and *Colorado River*. *Burford*, 319 U.S. 315; *Colorado River*, 424 U.S. 800. *Burford* abstention addresses those unusual circumstances where intervention of the federal courts "threaten[s] to frustrate the purpose of [a] complex administrative system that [a state] ha[s] established." *Quackenbush*, 517 U.S. at 725. The *Burford* doctrine "allows a federal court to dismiss a case … if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 726–27. Courts typically rely on *Burford* to abstain in circumstances where the plaintiff *seeks review* of a state's decision. *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (NOPSI), 491 U.S. 350, 359 (1989). The plaintiff here does not seek such review.

### A.    The *Colorado River* Analysis

The balance of the *Colorado River* factors weigh strongly in favor of abstention. While "[d]uplication and inefficiency [alone] are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction," *Burns*, 931 F.2d at 146, this case presents extraordinary circumstances. *See Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 31 (1st Cir. 2010).

The Court begins by addressing the *Colorado River* factors that cut in neither direction. *Id.* at 28 ("We begin with the neutral factors, which may be summarized quickly."). Both the state forum and this Court have assumed jurisdiction over the *res*. *Burns*, 931 F.2d at 146 (factor one). The forums are equally convenient, *Jiménez*, 597 F.3d at 28 (factor two), and the New Hampshire forum is equally equipped to protect the parties' interests, *United States v. Fairway Capital Corp.*, 483 F.3d 34, 43 (1st Cir. 2007) (addressing factor six and holding that the adequacy of the state forum is relevant only when it would disfavor abstention). Removal jurisdiction "is irrelevant here." *Jiménez*, 597 F.3d at 28 (factor eight). The remaining four factors favor abstention and illustrate why deference to the New Hampshire forum is the appropriate result.

The third *Colorado River* factor "concerns … piecemeal litigation." *KPS & Assocs., Inc. v. Designs by FMC, Inc.,* 318 F.3d 1, 10–11 (1st Cir. 2003). This factor "focus[es] on the practical effects of litigating suits deriving from the same transaction in two separate fora, and weighs in favor of dismissal only if there is some exceptional basis." *Id.* "The canonical example of such an exceptional basis is a clear

6

federal policy in favor of unified proceedings pursuant to a federal statute that is at issue in the case." *Jiménez*, 597 F.3d at 29. But the First Circuit has found an exceptional basis laid absent a federal policy on multiple occasions, such as where there are underlying, unusual issues of state law. *Rivera-Feliciano v. Acevedo-Vilá*, 438 F.3d 50, 61 (1st Cir. 2006). This case presents that class of exceptional circumstances. *Id.* Because the relevant transaction Mr. Jones complains of was addressed in the New Hampshire forum as a securities law action rather than a breach of contract action, because the issues underlying this case are unusual insofar as they implicate complex questions of New Hampshire securities law, and because the New Hampshire Bureau of Securities Regulation already issued an enforceable order compelling the defendants to pay restitution to Mr. Jones, penalties, *and* the Bureau's costs—the third factor weighs in favor of abstention. *Id.*

The fourth factor, "the order in which the forums obtained jurisdiction," is a misnomer. *Jimenez*, 597 F.3d at 31. This factor is not concerned with which action was filed first; the test is "more advanced" than that. *Id.* Courts must take a "pragmatic, flexible … view [at] the realities of the case" to determine whether the state or federal case is "more advanced at the time the *Colorado River* balancing is being done." *Id.* The reality of this case is that the New Hampshire litigation is significantly more advanced—a final order has been issued.

The final factor for the Court to address is the fifth factor, which considers whether state or federal law controls. *Burns*, 931 F.2d at 146. Here, no federal issues are raised. *See Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477

(1st Cir. 1985) (finding it significant that "[n]o federal issues [were] raised ... and no federal interest would be served by retaining jurisdiction over the case.").

Considering all of the factors, this is one of the rare instances meriting *Colorado River* abstention. Considering the possibility for inconsistent dispositions of the *res*, the heightened potential for piecemeal litigation, the reliance on New Hampshire law, the unsettled nature of aspects of that law that would inform our analysis, and the more advanced progress of the litigation in the New Hampshire regulatory system, the Court is convinced that the wisest judicial administration of this case is to defer to the judgment of the New Hampshire forum. *Jiménez*, 597 F.3d at 31.

### B.  The Appropriate Disposition

Having decided that abstention is appropriate, the Court "must next decide whether the appropriate disposition is dismissal or a stay of the proceedings." *Id*. The Supreme Court committed this decision to the discretion of the lower courts. *Moses H. Cone*, 460 U.S. at 28 (declining "to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel … suit"). The majority of circuits to consider the issue have held that a stay is always preferable because it may produce the same practical result as a dismissal while leaving the docket open in case loose ends remain at the conclusion of the state proceedings. *See Jiménez*, 597 F.3d at 31 (collecting cases). The First Circuit has not decided the issue categorically, but *Colorado River* has historically resulted in a stay in this Circuit's

8

cases. *See, e.g., id.* (finding "no harm to judicial economy in going the more cautious route"). The Court elects to continue that trend in this case.

## III.    CONCLUSION

For the foregoing reasons, the case is stayed. Counsel for the plaintiff shall file a status report with this Court every 90 days.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

September 3, 2024